IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| ROUTE CONSULTANT, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. _____ |
| | ) |
| ROUTES FOR SALE, LLC | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Route Consultant, Inc. ("Plaintiff"), by and through undersigned counsel, hereby files this Complaint against Defendant Routes for Sale, LLC ("Defendant") and shows unto the Court as follows:

### INTRODUCTION

1. This is a breach of contract case concerning Defendant's wrongful refusal to pay Plaintiff its share of commissions earned for selling FedEx Routes. At the time of filing this Complaint, Defendant owes Plaintiff $82,032.30 in commissions, which Defendant wrongfully refuses to pay.[1]

### PARTIES, VENUE, AND JURISDICTION

2. Plaintiff, Route Consultant, Inc., is a Tennessee corporation with its principal place of business in Nashville, Tennessee. Plaintiff is a citizen of the State of Tennessee.

3. Defendant, Routes for Sale, LLC, is a Florida limited liability company with its principal place of business in Lutz, Florida. The sole member of Routes for Sale, LLC is Ronald

---

[1] There is an additional FedEx route transaction that is scheduled to close in the coming weeks or months, upon which, the parties have agreed to split the commission. That future commission is excluded from the calculation above.

32609802 v1

L. Slusser, Jr., a citizen of Florida. Accordingly, Routes for Sale, LLC is a citizen of the State of Florida.

4.This court has subject matter jurisdiction pursuant to the provisions of 28 U.S.C. § 1332 because complete diversity of citizenship exists between Plaintiff and Defendant and the amount in controversy exceeds $75,000.00.

5.Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division.

## OPERATIVE FACTS

6.Plaintiff and Defendant entered into an Independent Consultant Agreement (hereinafter "Agreement") on or about February 24, 2017. A copy of the Independent Contractor Agreement is attached hereto as Exhibit A. The Agreement provides that "the exclusive venue of any action, proceeding, counterclaim, crossclaim or other litigation relating to, involving or resulting from this Agreement shall be in Hillsborough County, Florida." *See* Exhibit A at ¶ 12. Defendant breached the Agreement by refusing to pay Plaintiff for the commissions earned under the Agreement; thus, this action relates to the Agreement.

7.According to its website, Defendant sells delivery routes for several types of industries: Bimbo Bakery Routes, Bon Appetit Pastry Routes, Federal Express (FedEx) Routes, Flowers Bread Routes, Independent Bakery Routes, Lawn Mowing Routes, Martin's Bread Routes, Mission's Tortilla Routes, Pepperidge Farm Routes, Pool Cleaning Routes, Snyder's-Lance Chip Routes, Tastykake Cake Routes, Vending ATM Machine Routes, Vending Machine routes, Voortman Cookie Routes, other chip routes, and several other miscellaneous routes.

8.Plaintiff only sells FedEx pick-up and delivery (P&D) routes and FedEx linehaul runs. P&D operations deliver to local homes and businesses in a designated territory. Linehaul

runs involve long distance transport, ranging from several hundred to several thousand miles, performed by semi-trailer trucks. Plaintiff also has a consulting business in which Plaintiff advises other owners of FedEx Routes on the management and operation of their FedEx routes nationwide.

9. On or about February 24, 2017, Plaintiff and Defendant entered into the Agreement. Defendant agreed to provide Plaintiff with access to all current listings of Defendant except for those listings that Defendant placed exclusively in the possession of another sales associate or third party. Defendant also agreed to timely provide Plaintiff with leads on potential buyers of FedEx routes. If the lead on a potential buyer that Defendant provided to Plaintiff in a prompt and reasonable timeframe resulted in a sale of a FedEx route, then Defendant would pay 4.49% of the sale price to Plaintiff with fifteen (15) days.

10. Plaintiff was an independent contractor of Defendant, not an employee. The relationship between Plaintiff and Defendant was not an exclusive relationship. Paragraph 2 of the Agreement stated that, except as prohibited by the Agreement or by a separate agreement between the parties, Plaintiff was free to work for other individuals or businesses.

11. The Agreement contains both a non-competition provision and a non-solicitation provision. Prior to signing the Agreement drafted by Defendant, Plaintiff specifically negotiated that the non-competition provision would not apply to FedEx routes since that is the entire scope of Plaintiff's business. Defendant agreed. Paragraph 6(D) of the Agreement states:

> Non-competition. **With exception to FedEx Routes**, Associate hereby agrees that, in order to protect the Confidential Information of Broker, during the term of this Agreement with Broker, and for a period of five (5) years following the termination of this Agreement anywhere in the continental United States/contiguous United States, whether the termination shall be voluntary or involuntary, or with or without cause, or whether the termination is solely due to the expiration of the term of this Agreement,

> Associate agrees and covenants not to engage in Prohibited Activity. For purposes of this provision, "Prohibited Activity" is activity in which the Associate contributes Associate's knowledge, experience and skill, directly or indirectly, in whole or in part, as a contractor, employee, employer, owner, operator, manager, advisor, consultant, agent, partner, director, stockholder, officer, volunteer, intern or any other similar capacity to an entity or individual(s) engaged in the same or similar business as Broker. The same or similar business as Broker is defined as: the sale, re-sale, brokerage, and distribution of product, manufacturers, food, retail and delivery routes. Prohibited Activity also includes activity that may require or inevitably requests disclosure of Broker's trade secrets (as defined by the Florida Uniform Trade Secrets Act F. S. Chapter 688), proprietary information or Confidential Information. Nothing herein shall prohibit Associate from purchasing or owning less than one percent (1%) of the publicly traded securities of any corporation, provided that such ownership represents a passive investment and that the Associate is not a controlling person of, or a member of a group that controls, such corporation. Strict adherence to this section by the Associate is necessary to protect Broker's business interest, since Broker is selling routes in every state throughout the continental United States/contiguous United States.

*See* Exhibit A (emphasis added).

12. Section 6(F) of the Agreement states:

> Non-solicitation of Clients. Associate understands and acknowledges that because of the Associate's experience with and relationship to Broker, Associate will have access to and learn about much or all of Broker's Client information. "Client information" includes, but is not limited to, names, phone numbers, addresses, or order history, order preferences, chain of command, pricing information and other information identifying facts and circumstances specific to Clients and relevant to sales and services. Associate understands and acknowledges that loss of customer relationships and/or goodwill will cause significant and irreparable harm. Associate hereby agrees that during the term of this Agreement and for a period of five (5) year following the termination of this Agreement, whether the termination shall be voluntary or involuntary, or with or without cause, or whether the termination is solely due to the expiration of the term of this Agreement, not to directly or indirectly solicit, contact (including but not limited to phone, social media, e-mail, regular mail, express mail, telephone, fax and instant message), attempt to contact or meet with Broker's current, former, or prospective

> Clients for purposes of offering or accepting goods or services similar to or competitive with those offered by Broker. This restriction shall only apply to Clients or prospective Clients of Broker during the sixty (60) months preceding termination. In addition, Associate will not, in any manner or at any time, encourage any Client, person, firm, company or other business entity who are Clients or prospective Clients of Broker, employees or contractors of Broker, or who are otherwise doing business with the Broker, to cease doing business with Broker.

*See* Exhibit A.

13. Spencer Patton, the President and CEO of Route Consultant, owns several FedEx routes through other companies. The parties agreed that Defendant was not entitled to a commission when: (a) Mr. Patton sold his own routes, or (b) sold routes to someone Mr. Patton knew (*i.e.*, someone that was not referred to Plaintiff by Defendant). Defendant and Plaintiff only agreed to split the commissions when Defendant provided Plaintiff with a lead on a buyer (not known by Mr. Patton), who ultimately purchased a FedEx route.

14. Pursuant to the Agreement, Defendant agreed to pay the commissions owed to Plaintiff within fifteen (15) days after the funds are collected and have cleared. However, Defendant usually paid Plaintiff its portion of the commissions within 24 hours of receiving the funds and the deal closing.

15. On May 15, 2018, Defendant agreed to increase the amount Plaintiff was receiving in commissions from 4% of the sale price to 4.49% of the sale price. A copy of the May 15, 2018 email between Ron Slusser and Spencer Patton is attached hereto as Exhibit B.

### A.   Termination of the Agreement

16. On or about August 28, 2018, Plaintiff and Defendant mutually decided to terminate the Agreement.

17. The next day, on August 29, 2018, Mr. Slusser requested information on the six outstanding transactions that Plaintiff had recently listed as pending sales. In response, Mr.

Patton sent a list of the ten pending sales to Mr. Slusser on August 30, 2018, along with the status of each transaction.

18. Mr. Slusser responded by asking Mr. Patton to send the Purchase/Escrow Agreements, Listing Agreements, and confirmation of deposit for six of the ten deals via his Dropbox folder under "Active Contracts."

19. On September 6, 2018, Mr. Patton complied with Mr. Slusser's request and uploaded the requested documents which were in his possession, custody or control. Mr. Patton also advised that there were other files related to those transactions that were in either the email account or in the esign/docusign portal that Defendant set-up for Plaintiff, but that Plaintiff could no longer access those files because Defendant terminated Plaintiff's access.

20. Mr. Slusser responded by thanking Mr. Patton for uploading the documents and stated he had updated the pertinent files with the documents Mr. Patton sent.

21. Mr. Slusser then began to seek information concerning the pending sale of three (3) routes in Nashville (collectively referred to as the "Nashville Deal"). Plaintiff did not originally provide Defendant with the documents concerning the Nashville Deal because Defendant is not entitled to a commission for the sale of the Nashville Deal.

  B. **<u>Defendant's Refusal to Pay Commissions Owed to Plaintiff.</u>**

22. On October 3, 2018, Defendant's lawyer sent a Notice of Commission Withholding to Route Consultant (hereinafter "Notice"). A copy of the Notice of Commission Withholding is attached hereto as Exhibit C. The Notice states RFS "will be withholding all commission payments due to you until all contracts and monies are returned to the Company that are within your possession, custody, or control" and relies on Section 1(b) of the Agreement as the basis for withholding the commissions owed.

23. Defendant is withholding commissions concerning the following:

   a. Virginia FedEx Route: A total commission of $62,390.60 was earned and Plaintiff's portion of the commission is $31,160.60;

   b. Kentucky FedEx Route: A total commission of $51,962.70 was earned and Plaintiff's portion of the commission is $25,952.20; and

   c. St. Louis FedEx Route: A total commission of $49,894.50 was earned and Plaintiff's portion of the commission is $24,919.50.

24. Section 1(b) of the Agreement states:

   Return of Broker Property. Upon termination of this Agreement, whether the termination shall be voluntary or involuntary, or with or without cause, or whether the termination is solely due to the expiration of the term of this Agreement, Associate shall immediately return any and all Confidential Information maintained or possessed by Associate in any form, including written and digital information, and all copies thereof as well as other written communications and documentation associated with its services to Broker (such as proposals to clients, emails from prospective or existing clients, etc.). All other property belonging to Broker, including that which contains Broker's information (cell phone, computer, tablet, marketing materials, office supplies, etc.), shall be returned untampered with and containing all information that had been thereon prior to termination. Broker shall not be obligated to pay Associate its **final payment** until Associate has returned to Broker all Broker Property.

*See* Exhibit A (emphasis added).

25. The Notice also requested all information regarding the Nashville Deal.

26. Plaintiff was forced to retain counsel who responded to the Notice on October 5, 2018. Plaintiff's counsel confirmed that Plaintiff had returned all "Broker Property" and reiterated that Plaintiff previously provided the requested information concerning Defendant's deals that were in its possession, custody and control on September 6, 2018.

27. Section 1(b) of the Agreement only permits Defendant to withhold the "final payment" under the Agreement. The commissions for the Virginia Deal and Kentucky Deal are not the "final" payments due under the Agreement because there were still two (2) additional deals that were scheduled to close.

28. Defendant continued to refuse to pay the commissions owed to Plaintiff until Plaintiff provided all the documents concerning the Nashville Deal.

29. Despite the fact that Defendant refused to pay Plaintiff its portion of the commissions owed, Plaintiff continued to act in good faith toward Defendant. On October 19, 2018, Plaintiff timely wired the money for the St. Louis Deal to Defendant.

30. On October 22, 2018, Defendant responded that it was entitled to withhold the commissions based on both Section 1(d) of the Agreement and Section 4(B)(4) of the Agreement. Section 4(B)4) of the Agreement states: "Compensation After Termination of Agreement: After termination of this Agreement, Broker will pay Associate any amount earned prior to termination less amounts owed to Broker."

31. On October 26, 2018, Plaintiff informed Defendant that the sale of a portion of the Nashville Deal was terminated. Plaintiff also provided Defendant with a copy of the Listing Agreement and Asset Purchase Agreement for the sale of the remaining portion of the Nashville Deal.

32. Defendant claims it is entitled to 4.5% of the sale price of the Nashville Deal, which equates to $24,750.

33. Defendant owes Plaintiff $82,032.30 in commissions for the sale of the Virginia, Kentucky and St. Louis FedEx routes.

34. Section 4(B)(4) does not permit Defendant to withhold $82,032.30 in commissions owed to Plaintiff when only $24,750 is in dispute.

35. All conditions precedent to the filing of this action have either been performed or have been waived. Plaintiff has fully performed its contractual obligations.

## COUNT I – **BREACH OF CONTRACT**

36. The allegations contained in paragraph 1 through 35 are incorporated herein by reference as if fully set forth below.

37. Plaintiff and Defendant entered into a valid and enforceable contract.

38. Defendant agreed to pay Plaintiff 50% of the commissions earned on all deals.

39. On or about October 2, 2018, the Virginia FedEx Deal was finalized. The commission earned on the deal is $ 62,390.60.

40. Defendant owes Plaintiff $31,160.60 for the Virginia FedEx Deal and was required to pay Plaintiff its portion of the commission by October 17, 2018.

41. Defendant has not paid Plaintiff the commission owed on the Virginia FedEx Deal.

42. On or about October 3, 2018, the Kentucky FedEx Deal closed. The commission earned on the deal is $51,963.70.

43. Defendant owes Plaintiff $25,952.20 in commissions for the Kentucky FedEx Deal and was required to pay Plaintiff its portion of the commission by October 18, 2018.

44. Defendant has failed to pay Plaintiff the commission owed on the Kentucky FedEx Deal.

45. On or about October 19, 2018, the St. Louis deal was finalized. The commission earned on the deal is $49,894.50.

46. Defendant owes Plaintiff $24,919.50 for the St. Louis Deal and was required to pay Plaintiff its portion of the commission by November 3, 2018.

47. Defendant failed to pay Plaintiff the commission owed on the St. Louis Deal.

48. Defendant is in breach of the Agreement, and Defendant is liable to Plaintiff under the Agreement for all commissions owed. Specifically, Defendant breached its contract with Plaintiff by its failure and refusal to fully and promptly pay the amounts owed to Plaintiff as required by the terms of the Agreement.

49. As a result, Plaintiff is entitled to compensatory damages for Defendant's breach, plus pre-judgment and post-judgment interest and costs of litigation.

## COUNT II – QUANTUM MERIUT

50. The allegations contained in paragraph 1 through 35 are incorporated herein by reference as if fully set forth below.

51. In the alternative to Count I, Plaintiff provided its valuable services to Defendant. Defendant accepted those services from Plaintiff without compensating Plaintiff.

52. Plaintiff provided those services for the benefit of Defendant. Defendant knew or should have known that Plaintiff expected compensation when Defendant accepted those services. A reasonable person receiving the benefits provided by Plaintiff would normally expect to pay for those benefits.

53. Plaintiff expected to be paid for the services it performed in connection with its work for Defendant from the commissions Defendant received through Plaintiff's work.

54. Because Plaintiff expected compensation, Defendant's acceptance of these services without payment resulted in serious injury to Plaintiff. Plaintiff sues to recover these damages.

## COUNT III - <u>UNJUST ENRICHMENT</u>

55. The allegations contained in paragraph 1 through 35 are incorporated herein by reference as if fully set forth below.

56. As alleged with particularity above, Plaintiff performed valuable services in connection with its work for Defendant.

57. As alleged with particularity above, at all relevant times such services were performed for the benefit of Defendant and did, in fact, greatly benefit Defendant.

58. As alleged with particularity above, at all relevant times the services Plaintiff performed in connection with its work for Defendant was accepted by Defendant and used and appropriated for Defendant's own gain.

59. As alleged with particularity above, at all relevant times Plaintiff expected to be paid for the services it performed in connection with its work for Defendant from the commissions Defendant received through Plaintiff's work.

60. As a result of Defendant's unjust enrichment, Plaintiff is entitled to the commissions earned in addition to pre-judgment and post-judgment interest, and costs of litigation.

## COUNT IV – <u>CONVERSION</u>

61. The allegations contained in paragraph 1 through 35 are incorporated herein by reference as if fully set forth below.

62. The money for the Kentucky Deal, Virginia Deal and St. Louis Deal was wired to Defendant to be held in escrow. Defendant released the money owed to the seller of each route, but wrongfully kept Plaintiff's portion of the commissions due for the Kentucky Deal, Virginia Deal and St. Louis Deal.

63. As alleged with particularity above, while acting in a fiduciary capacity Defendant assumed dominion and control of funds and property rightfully belonging to Plaintiff, depriving it of its lawful possession.

64. As alleged with particularity above, to no avail, Plaintiff has made demands upon Defendant to restore funds and property wrongfully converted and misappropriated while acting in a fiduciary capacity.

65. As alleged with particularity above, Plaintiff was damaged by Defendant's conversion and misappropriation and its damages were proximately caused by Defendant's conduct.

66. As a result of the foregoing, Plaintiff is entitled to actual and consequential damages for Defendant's conversion-misappropriation plus pre-judgment and post-judgment interest, and cost of litigation.

## COUNT V - **DECLARATORY JUDGMENT**

67. The allegations contained in paragraph 1 through 35 are incorporated herein by reference as if fully set forth below.

68. Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201(a). There is an actual, justiciable controversy between the parties regarding their rights, status, legal relations and obligations.

69. Pursuant to 28 U.S.C. § 2201(a), Plaintiff is entitled to a declaratory judgment:

    a. That Defendant owes Plaintiff $82,032.30 in commissions.

    b. That the Agreement does not allow Defendant to withhold $82,032.30 in commissions.

    c. That Plaintiff does not owe Defendant commissions on the Nashville Deal.

      d.      That Section 6(D) of the Agreement, which is entitled "Non-competition" violates Florida Statute § 542.335 and is unenforceable against Plaintiff and any of its employees because it is not reasonably limited in time or place;

      e.      That Section 6(D) of the Agreement violates Florida Statute § 542.335 and is unenforceable because there is no legitimate business interest justifying the restrictive covenant;

      f.      That to the extent Section 6(D) of the Agreement is enforceable, it does not prohibit Plaintiff from acting as broker in the sale of any FedEx routes;

      g.      That to the extent Section 6(D) of the Agreement is enforceable, it only prohibits Plaintiff from selling routes, other than FedEx routes, for a period of six (6) months beginning on August 28, 2018, when the Agreement terminated;

      h.      That Section 6(F) of the Agreement, which is entitled "Non-solicitation of Clients" violates Florida Statute § 542.335 and is unenforceable because it is not reasonably limited in time or place;

      i.      That Section 6(F) of the Agreement does not apply to current or former customers of Defendant if Plaintiff had an independent relationship with the current or former customer;

      j.      That Section 6(F) of the Agreement is unenforceable to the extent it seeks to prohibit Plaintiff from soliciting business from "prospective clients" of Defendant which is undefined, vague and ambiguous;

      k.      That to the extent Section 6(F) of the Agreement is enforceable, it only prohibits Plaintiff from soliciting Defendant's clients for a period of six (6) months beginning on August 28, 2018, when the Agreement terminated;

70.     As a direct and proximate result of the conduct described herein, Plaintiff has incurred (and will continue to incur) costs and attorneys' fees in order to obtain the judicial decree and indemnification sought herein. Plaintiff sues to recover those damages.

WHEREFORE, with respect to each claim for relief set forth in this Complaint, Plaintiff demands entry of a final judgment for all compensatory damages and exemplary damages, together with all costs, attorneys' fees, and for any such other general relief which the Court may deem necessary to protect Plaintiff's rights.

*/s/ Robert V. Williams*
Robert V. Williams, Esq.
Florida Bar No.: 144720
**BURR & FORMAN LLP**
P.O. Box 380
Tampa, Florida 33601-0380
TEL: (813) 221-2626
FAX: (813) 221-7335

-And-

Briana M. Montminy, Esq.
Florida Bar No.: 579572
**BURR & FORMAN LLP**
222 Second Avenue South, Suite 2000
Nashville, Tennessee 37201
Primary email:  rwilliams@burr.com
                bmontminy@burr.com
Secondary email:  pturner@burr.com
                  tlangley@burr.com

*Counsel for Plaintiff*